# EXHIBIT 1

**Barton and Burrows, LLC**
5201 Johnson Drive, Suite 110
Mission, KS 66205
Phone: (913) 563-6255

George A. Barton
DIRECT DIAL: (913) 563-6255
Email: george@bartonburrows.com

November 22, 2023

**VIA CM/ECF**
Mr. Christopher M. Wolpert
Clerk of the Tenth Circuit
U.S. Court of Appeals for the Tenth Circuit
The Byron White U.S. Courthouse
1823 Stout Street
Denver, CO 80257

Re: **F.R.A.P. 28(j) Submission of Supplemental Authority in *Mike Boulter, et al., Plaintiffs-Appellants v. Noble Energy, Inc. and Kerr-McGee Oil & Gas OnShore, LP, Defendants-Appellees*, Case No. 23-1118**

Dear Mr. Wolpert:

On behalf of Plaintiffs-Appellants ("Appellants") in the above-captioned appeal, I am writing, pursuant to Fed R. App. 28(j), to notify the panel for this appeal of the Order Declining Jurisdiction which was issued on November 7, 2023 by the Colorado Energy and Carbon Management Commission's, (f/k/a the Colorado Oil and Gas Conservation Commission) ("the "Commission"). A copy of the November 7, 2023 Order Declining Jurisdiction is attached hereto as Exhibit 1.

The primary reason for Appellants' submission of the attached supplemental authority is to further support Appellants' argument that the Commission has made a final determination that it does not have subject matter jurisdiction to decide the Appellants' breach of contract claims against Respondents Noble Energy, Inc. ("Noble") and Kerr-McGee Oil & Gas OnShore, LP ("Kerr-McGee") which have been asserted by Appellants against Respondents Noble and Kerr-McGee in the underlying litigation in the district court, and therefore Appellants have fully complied with District Judge Martinez's order in *Boulter I* requiring Appellants to first exhaust their breach of contract claims in the Commission. These arguments are set forth in Appellants' October 17, 2023 Reply Brief, at pages 9-12.

The other reason for the submission of the attached supplemental authority is to inform the panel for this appeal that the Commission's November 7, 2023 Order Declining Jurisdiction has fully adopted the Commission Hearing Officer's determination which rejected Noble and Kerr-McGee's contention that the Appellants' breach of contract claims against Noble and Kerr-McGee

are barred by res judicata, as set forth in the November 7, 2023 Order Declining Jurisdiction, at pages 4-6. This issue is addressed in the Appellants' October 17, 2023 Reply Brief, at pages 10-11.

                                      Respectfully submitted,

                                      */s/George Barton*
                                      George Barton
                                      Attorney for Plaintiffs-Appellants

cc: All parties via CM/ECF

Enclosure

## **CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

      This document complies with the word limit set forth in Fed. R. App. P. 28 because this document contains 276 words.

                                      */s/George Barton*
                                      George A. Barton
                                      Attorney for Plaintiffs-Appellants

# EXHIBIT 1

BEFORE THE ENERGY AND CARBON MANAGEMENT COMMISSION
OF THE STATE OF COLORADO

| | |
|---|---|
| IN THE MATTER OF THE PAYMENT OF PROCEEDS FROM THE PRODUCTION OF OIL AND GAS AS ESTABLISHED BY SECTION 34-60-118.5, C.R.S., WELD COUNTY, COLORADO | ) CAUSE NO. 1 <br> ) <br> ) DOCKET NO. 220400088 <br> ) <br> ) TYPE: GENERAL ADMINISTRATIVE <br> ) <br> ) ORDER NO. 1-329 |

**ORDER DECLINING JURISDICTION**

The Commission heard this matter on October 4, 2023, at the Colorado Energy and Carbon Management Commission, 1120 Lincoln Street, Suite 801, Denver, Colorado, upon exceptions filed by Noble Energy, Inc. (Operator No. 100322) ("Noble") and Kerr-McGee Oil & Gas Onshore LP (Operator No. 47120) ("Kerr-McGee") (collectively the "Petitioners") to the Hearing Officer's Recommended Order that the Commission lacks jurisdiction over its contractual disputes regarding the interpretation and application of the royalty provisions within oil and gas leases with lessor Mike Boulter, Boulter, LLC, Ralph Nix Produce Inc., and Barclay Farms, LLC (collectively "Boulter" or "Applicants"). Upon review, the Commission enters the following findings, conclusions of law, and order.

PROCEDURAL HISTORY

On March 30, 2020, May 17, 2021, December 30, 2021, and July 26, 2022 Applicants filed four putative class action suits against Noble and Kerr-McGee in the United States District Court for the District of Colorado (hereinafter "*Boulter I, II, III,* and *IV*"). As of the undersigned date, all four class actions have been dismissed for failure to exhaust administrative remedies before the Commission. Notably, the District Court dismissed *Boulter IV* with prejudice on issue preclusion grounds, and *Boulter IV* is pending appeal before the Tenth Circuit Court of Appeals as of the undersigned date. Boulter Reply in Further Support of Motion for Determination that that the Commission Lacks Jurisdiction over the Parties' Royalty Underpayment Disputes ("Reply"), Ex. 1.

On April 28, 2022, Applicants filed a verified Application ("Application") with the Commission requesting a determination of whether the Commission retained jurisdiction over their disputed royalty underpayment claims against Noble and Kerr-McGee.

On May 4, 2022, the Commission Secretary issued a Notice of Hearing for the above-described matter that scheduled a hearing for August 3, 2022, and a petition deadline of July 5, 2022.

On July 5, 2022, Noble and Kerr-McGee filed separate petitions to the Application, as well as a Joint Motion to Bifurcate Claims in Applicants' Form 38 and Application ("Motion to Bifurcate").

On July 14, 2022, the Hearing Officer stayed this matter pending the Colorado Supreme Court's decision in *Antero Resources Corp. v. Airport Land Partners, Ltd.*, 526 P.3d 204 (2023) ("*Airport Land*"), which bore directly upon the Commission's jurisdiction to address disagreements over the extent of Royalty Owners' legal entitlements and whether the existence of terms that are

"subject to legal debate," constitute a bona fide dispute over the interpretation of a contract for payment under section 34-60-118.5(5), C.R.S. (2021). The Hearing Officer also stayed further briefing on Petitioners' Joint Motion to Bifurcate.

On March 27, 2023, the Colorado Supreme Court issued its decision in *Airport Land* and clarified the Commission's lack of jurisdiction over bona fide contract disputes. Following the issuance of *Airport Lands*, the Hearing Officer lifted the stay and ordered the parties to confer on a briefing schedule as to the Commission's jurisdiction over Boulter's application.[1]

On August 23, 2023, following briefing from the parties on the jurisdictional question, the Hearing Officer issued an order recommending the Commission conclude it lacked jurisdiction to resolve Boulter's application ("Recommended Order"). On September 12, 2023, Noble and Kerr-McGee each filed exceptions to the Recommended Order pursuant to Rule 520.b (the "Exceptions"). Though not taking issue with the Hearing Officer's ultimate conclusion that the Commission lacked jurisdiction, both Exceptions argued the Hearing Officer erred by concluding the leases at issue were silent on the deduction of post-production costs from royalty payments. The Exceptions requested the Commission strike those conclusions from the Recommended Order. Boulter argued in response to the Exceptions that the Hearing Officer correctly concluded the leases at issue were silent.

On October 4, 2023, the Commission heard the exceptions. Upon unanimous (5-0) vote, the Commission granted the Exceptions in part and denied the Exceptions in part, as detailed in the below order.

PARTY ARGUMENTS

Boulter argues that the Commission lacks jurisdiction to resolve any of the issues presented in the three leases in which Noble owns an interest (the "Noble Leases") and the three leases in which Kerr-McGee owns an interest (the "Kerr-McGee Leases"). Motion, pp. 2-3. All three of the Noble Leases contain the following provision with regard to royalty payments:

> To deliver to the credit of the lessor, free of cost, in the pipe line to which the lessee may connect his wells, the equal [a specified percentage] part of all oil produced and saved from the leased premises, as royalty or, at lessee's election, to pay the lessor for such royalty the market price prevailing the day the oil is run into the pipe line, or in storage tanks.

The Kerr-McGee Leases, meanwhile, each contain slightly different language with regard to royalties. The February 1, 1970 lease states:

> The lessee shall deliver to lessor as royalty, free of cost, on the lease, or into the pipe line to which lessee may connect its wells the equal one-eighth part of all oil produced and saved from the leased premises, or at the lessee's option may pay to the lessor for such one-eighth royalty the market price for oil of like grade and gravity prevailing on the day such oil is run into the pipe line or into storage tanks.

The July 1, 1970 lease states:

---

[1] In an April 24, 2023, email to the parties, the Hearing Officer denied Petitioners' request to first brief the Motion to Bifurcate, reasoning that briefing the jurisdictional question at the outset could potentially result in the dismissal of one or more claims within the Application and moot the bifurcation issue altogether.

Appellate Case: 23-1118   Document: 010110957475   Date Filed: 11/22/2023   Page: 4

> To deliver to the credit of lessor, free of cost, in the pipe line to which lessee may connect his wells, the equal one eighth (1/8th) part of all oil produced and saved from the leased premises.

And the June 18, 1980 lease states:

> To deliver to the credit of the lessor, free of cost, in the pipe line to which Lessee may connect wells on said land the equal one-eighth (1/8) part of all oil produced and saved from the leased premises.

Applicants allege that none of the leases contains any provisions that permit the Lessees to deduct any post-production costs in the calculation and payment of royalties to Applicants. Motion, p. 4.

In light of the *Airport Land* decision, Applicants argue that a determination of no jurisdiction is warranted because the parties dispute whether the inclusion of certain post-production costs in the calculation of royalties occurred and breached the lease terms. *Id.* at 9. Applicants argue that the mere existence of this disagreement is sufficient under the Supreme Court's decision in *Airport Land* to dismiss the matter for lack of jurisdiction. *Id.* at 10.

In a Joint Response, Noble and Kerr-McGee agree that the matter should be dismissed, but on the grounds of res judicata in light of the District Court's Dismissal of *Boulter IV* with prejudice. Response, p. 3. The Petitioners further argue that even if res judicata does not bar the claim, Applicant failed to demonstrate the existence of a bona fide contract dispute at all. Response, p. 5, n.1. They claim that Applicants have never identified which lease terms are in dispute or how the parties' interpretations affect ECMC's jurisdiction. *Id.*

## ANTERO RESOURCES CORP. V. AIRPORT LAND PARTNERS, LTD.

In *Airport Land*, the Supreme Court further refined what constitutes a "bona fide dispute over the interpretation of a contract" that divests the Commission of jurisdiction in payment of proceeds matters. *Antero Resources Corp. v. Airport Land Partners, Ltd.*, 526 P.3d 204, 210 (Colo. 2023). The Oil and Gas Conservation Act confers the Colorado Energy and Carbon Management Commission ("ECMC") jurisdiction over payment of proceeds disputes that do not implicate a "bona fide dispute of contract interpretation." C.R.S. § 34-60-118.5(5). "The only way to read the three references to bona fide contract disputes in section 118.5 harmoniously is to conclude that when the parties in good faith disagree about the meaning or application of a relevant term in a lease agreement or contract, there is a 'bona fide dispute over the interpretation of a contract' that divests COGCC of jurisdiction." *Antero*, 526 P.3d 204, 211 (Colo. 2023). The statute does not confer on [ECMC] the authority to interpret any disputed contract terms—even if those terms seem unambiguous or depend on factual determinations. *Id.* Any good faith dispute over meaning and appropriate application of contract terms relevant to the payment of proceeds statute should be dismissed by the Commission and addressed by the courts. *Id.* at 213.

The Supreme Court then addressed three scenarios in which the Commission lacked jurisdiction in a payment of proceeds related matter. In review of the "Airport Land lease," where the implied covenant to market applied because the lease did not address the deduction of post-production costs. *Id.* at 211-12. Although "marketability" is a question of fact, the Court found that it nevertheless could implicate questions of interpretation that preclude Commission jurisdiction. *Id.* at 212. The Court found that a bona fide dispute over the interpretation of a contract existed

because the parties' disagreement over what constituted "marketability" required interpretation of other, undefined terms in the lease, such as where the first point of marketability was and whether reservation fees could be deducted. *Id.*

Next, in the "Casey Lease," the parties disputed whether an operator's use of gas as in-kind payment without paying royalties violated a "no costs" clause contained within the lease, and whether that provision controlled over the two definitions within the "market price" clause in the same provision. *Id.* at 212. The Court found that the Commission lacked jurisdiction because resolution required the interpretation of which definition of "market price" applied and whether the in-kind payments and other deductions were consistent with the no-cost provision. *Id.* at 213.

Finally, in the "Limbach-Schuster Lease," the parties disputed whether Antero's deductions of transportation, processing, and treating costs from the selling price was permitted based upon the lease's definition of the term "value." *Id.* The Court found that, although the district court found that the lease terms were unambiguous, the issue constituted a "bona fide dispute over the interpretation of a contract" because it required the court to engage in contract interpretation to reach that conclusion. *Id.*

## CONCLUSIONS OF LAW AND ANALYSIS

Upon review, the Applicants' Motion is granted in full and this matter is dismissed for lack of jurisdiction.

1. *Applicants' Claims are not barred by Res Judicata.*

As an initial matter, Petitioners argue that the application is barred by res judicata. Upon review, the instant case is not barred by res judicata because there is no final judgment on the merits.

Res judicata, or claim preclusion, "prevents the perpetual re-litigation of the same claim or direct cause of action." *Foster v. Plock*, 394 P.3d 1119, 1120 (Colo. 2017). In general, claim preclusion bars a second action on the same claims litigated in a prior proceeding, as well as any issues that could have been raised in the first proceeding but were not." *Cruz v. Benine*, 984 P.2d 1173, 1176 (Colo. 1999). Claim Preclusion principles may extend to administrative proceedings. *Holnam, Inc. v. Indus. Claim Appeals Office*, 159 P.3d 795, 797 (Colo. App. 2006). In all cases, claim preclusion bars a claim in a current proceeding if four elements are met: (1) "the judgment in the prior proceeding was final"; (2) "the prior and current proceeding involved identical subject matter"; (3) "the prior and current proceeding involved identical claims for relief"; and (4) "the parties to both proceedings were identical or in privity with one another." *Foster*, at 1123 (citations omitted).

The federal district court dismissed *Boulter IV* with prejudice because Applicants' argument that exhaustion of administrative remedies was not required or would be futile was barred by issue preclusion based upon the decision in *Boulter I*. Order, *Boulter IV*, (Apr. 6, 2023), p. 4. The District Court therefore did not reach Applicants' breach of contract claims. *See id.*

Importantly, the District Court in *Boulter IV* precluded further litigation of Applicants' exhaustion and futility argument, and dismissed the case for *lack of subject matter jurisdiction. Id.* (emphasis added). "[i]t is well-settled in Colorado that a dismissal for lack of subject matter jurisdiction is not a judgment on the merits, and therefore does not preclude a subsequent action on the same claim in a proper forum. *In re Estate of Murphy*, 195 P.3d 1147, 1153 (Colo. App.

2008). Simply put, the dismissal did not extend beyond the jurisdictional bar, and none of Applicants' claims related to breach of contract were dismissed on the merits. Absent a final judgment on the merits, the Applicants' claims cannot be barred by res judicata.

Petitioners are correct that Applicants are precluded from raising any arguments put forth in *Boulter I* through *Boulter IV* challenging the finding that the courts lacked subject matter jurisdiction due to Applicants' failure to exhaust administrative remedies. That determination, and a dismissal on those grounds, even with prejudice, does not bar a second action as a matter of claim preclusion. Rather, it bars a second action as a matter of issue preclusion, in this case the jurisdictional issue discussed above. *Matosantos Com. Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1210–11 (10th Cir. 2001) (Although a dismissal for lack of jurisdiction does not bar a second action as a matter of claim preclusion, it does preclude relitigation of the issues determined in ruling on the jurisdiction question....18 Charles Alan Wright et al., Federal Practice and Procedure § 4436 (1981); *see also Okoro v. Bohman*, 164 F.3d 1059, 1063 (7th Cir.1999) ("[A] jurisdictional dismissal precludes only the relitigation of the ground of that dismissal, and thus has collateral estoppel (issue preclusion) effect rather than the broader res judicata effect." (citations omitted)); *GAF Corp. v. United States,* 818 F.2d 901, 912 (D.C.Cir.1987) (explaining that, despite Rule 41(b), a judgment dismissing an action for lack of jurisdiction will "have preclusive effect as to matters actually adjudicated" and will "preclude relitigation of the precise issue of jurisdiction that led to the initial dismissal"); Restatement (Second) of Judgments § 20 cmt. b (1980)).

It follows that Applicants' claim may proceed before the Commission. Applicants' breach of contract claims were never reached by the court in *Boulter I-IV*.[2] Nor is the precluded issue before the Commission, as it would make little sense to argue against a requirement to exhaust administrative remedies before the administrative agency itself.

Even if the dismissal with prejudice were to extend beyond Applicants' jurisdictional arguments, that judgment has been appealed to the Tenth Circuit. Reply, Ex. 1. Colorado precedence suggests that a judgment pending on appeal is not a final judgment in satisfaction of the first prong of issue or claim preclusion analysis. *See Rantz v. Kaufman*, 109 P.3d 132, 141 (Colo. 2005)("...for purposes of issue preclusion, a judgment that is still pending on appeal is not final..."); *compare Koon v. Barmettler,* 134 Colo. 221, 226, 301 P.2d 713, 716 (Colo. 1956) (Finding the district court's dismissal of a case with prejudice became res judicata when, among other things, "no attempt was made to have the order reviewed"); *Holnam, Inc. v. Indus. Claim Appeals Office*, 159 P.3d 795, 798 (Colo. App. 2006) (Holding that in the context of claim preclusion, an initial determination of an ALJ "is final, inasmuch as it has not been appealed"). Absent a final judgment, res judicata does not bar Applicants' claims. "A final judgment is an essential prerequisite for the applicability of both res judicata and collateral estoppel." *S.O.V. v. People in Int. of M.C.*, 914 P.2d 355, 359 (Colo. 1996).

---

[2] It bears noting that Applicants claim for relief before the Commission is also different from that before the federal district courts. Rather than alleging and requesting a finding of breach of contract, Applicants request a determination that the Commission have no jurisdiction over its royalty underpayment claims. It is therefore possible that Petitioners also fail to meet the third prong of claim preclusion doctrine, but because there is no final judgment, the Hearing Officer need not address that element of claim preclusion analysis.

The Application is not barred by res judicata and may proceed. As the Exceptions did not take issue with the Recommended Order regarding res judicata, the Commission did not address or consider the Hearing Officer's conclusions.

### 2. The Commission must decline subject matter jurisdiction over Applicants' claims.

The Commission now turns to Applicants' request that the Commission decline jurisdiction pursuant to the *Airport Lands* decision. In their briefing following the Hearing Officer's lifting of the stay, Applicants contended that the disputes regarding the leases are bona fide disputes of contract interpretation and must be dismissed. Petitioners disagreed.[3]

1. The Noble Leases

Applicants contend that the Commission lacks jurisdiction over their royalty underpayment claims against Noble because the breach of contract allegations are based upon a dispute over how the royalty provisions within the leases should be interpreted. Motion, p. 2. Applicants allege that Noble is deducting certain post-production costs from royalty amounts, including but not limited to costs which Noble itself describes as "unloading charges," "DJ Basin gathering charges,", and self-described "Wattenberg pipeline tariff charge" in violation of the leases, which do not authorize the deduction of any post-production costs. Application, p. 4; Motion, p.5, Ex. 5, p. 6. Because determination of what post-production costs, if any, may be deducted requires analysis of the lease, Applicants argue that the Commission lacks subject matter jurisdiction to adjudicate the matter. Motion, pp. 9-10.

Noble argues that the Commission retains jurisdiction over this matter because resolution of Applicants' claims will require the Commission only to enforce unambiguous lease provisions—a task falling squarely within the Commission's statutorily-delegated authority. Noble Petition, p. 2.

In the Recommended Order, the Hearing Officer concluded there is no dispute that Noble Leases do not contain any provisions permitting or even addressing the deduction of post-production costs, so the implied covenant to market applies. *See Antero*, at 211-12. In their Exceptions, the Petitioners argued there was a dispute regarding whether the Noble Leases were silent on the deduction of post-production costs, and therefore the Commission should delete the Hearing Officer's conclusions. In response to the Exceptions, Boulter argued the Hearing Officer correctly concluded the Noble Leases were silent.

The Hearing Officer's conclusion regarding the Noble Leases were based upon the Hearing Officer's review of the arguments raised by the parties in their briefing on jurisdiction. However, regardless of whether or not the Noble Leases are silent on the deduction of post-production costs, the Commission lacks jurisdiction.

Assuming a dispute regarding whether the Noble Leases are silent on the deduction post-production costs exists, the Commission lacks jurisdiction because resolving that dispute would require the Commission to interpret the Noble Leases, even if the Lease terms are unambiguous. Determination of whether a contract term or provision is "unambiguous" requires interpretation of

---

[3] In their Response Brief, Petitioners devote all of one footnote to disputing the substance of Applicants' claims, instead relying on the res judicata argument. Response, p. 5, n.1. Both Petitioners supplied some additional detail regarding their defenses in their initial petitions that predate the *Airport Land* decision, which are described in this order.

those terms and therefore is beyond the subject matter jurisdiction of the Commission. *Antero*, 526 P.2d at 211. A good faith dispute over these terms exists, and the Commission therefore lacks jurisdiction.

If there was no dispute regarding whether the Noble Leases are silent on the deduction of post-production costs, the Commission still lacks jurisdiction. Much like the Airport Lands Leases described in *Airport Land*, the parties' dispute would boil down to the point of "marketability" and whether the unloading charges, gathering charges, and tariff charge, among others, are explicitly prohibited by the lease language or among "those expenses necessary to place oil and gas in a condition acceptable for market" as well as what costs included are reasonable for the transport." *Id.*, citing *Rogers v. Westerman Farm Co.*, 29 P.3d 887, 903 (2001). A good faith dispute over these terms exists, and the Commission therefore lacks jurisdiction.

Accordingly, the Commission lacks jurisdiction to resolve the issues presented regarding the Noble Leases, and the Application as related to Noble and the Noble Leases is hereby dismissed.

2. The Kerr-McGee Leases

Applicants argue that the Commission lacks subject matter jurisdiction over the Kerr-McGee Leases for similar reasons. They argue that Kerr-McGee is violating the leases by impermissibly deducting post-production costs related to transporting the oil from the well to a transportation pipeline and various self-described "other costs" related to transporting the oil to a delivery point. Application, p. 4; Motion, p. 5. Because determination of what post-production costs, if any, may be deducted requires analysis of the lease, Applicants argue that the Commission lacks subject matter jurisdiction to adjudicate the matter. Motion, pp. 9-10.

Kerr-McGee argues that Applicants allegations fall within the Commission's jurisdiction under section 118.5 of the Act because a determination of what costs are deducted does not turn on the meaning of an undefined contract term, and those deductions made fall well within settled law. Kerr-McGee Petition, p. 4. Kerr-McGee contends that it does not deduct from royalties any expenses incurred prior to its sales at the interstate pipeline or from wellhead to inlet of the interstate pipeline, and that the only deductions made were Applicants' proportionate share of the expense to transport the oil on an interstate pipeline for sale in Cushing, Oklahoma. *Id.* Kerr-McGee emphasizes that it is well settled that costs to transport production on a pipeline to a distant market (here, Oklahoma) are properly deducted from the lessor's royalties. *Id.* (citations omitted).

In the Recommended Order, the Hearing Officer concluded the Kerr-McGee Leases are silent on the deduction of post-production costs, so the implied covenant to market applies. *See Antero*, at 211-12. In their Exceptions, the Petitioners argued there was a dispute regarding whether the Kerr-McGee Leases were silent on the deduction of post-production costs, and therefore the Commission should delete the Hearing Officer's conclusions. In response to the Exceptions, Boulter argued the Hearing Officer correctly concluded the Kerr-McGee Leases were silent.

The Hearing Officer's conclusion regarding the Kerr-McGee Leases were based upon the Hearing Officer's review of the arguments raised by the parties in their briefing on jurisdiction. However, regardless of whether or not the Kerr-McGee Leases are silent on the deduction of post-production costs, the Commission lacks jurisdiction.

7

Order (220400088/1-329)

Assuming a dispute regarding whether the Kerr-McGee Leases are silent on the deduction post-production costs exists, the Commission lacks jurisdiction because resolving that dispute would require the Commission to interpret the Kerr-McGee Leases, even if the Lease terms are unambiguous. Determination of whether a contract term or provision is "unambiguous" requires interpretation of those terms and therefore is beyond the subject matter jurisdiction of the Commission. *Antero*, 526 P.2d at 211. A good faith dispute over these terms exists, and the Commission therefore lacks jurisdiction.

Even if there was no dispute regarding whether the Kerr-McGee Leases are silent on the deduction of post-production costs, the Commission still lacks jurisdiction. Although the parties' dispute implicates questions of fact over what is being deducted from royalty payments, those factual determinations implicate questions of contract interpretation regarding whether the acknowledged deductions are either consistent with the implied covenant to market or prohibited by the language of royalty provisions of the leases. *Antero*, at 212. Because the complaint involves a good faith dispute over how to interpret the royalty provisions of the leases and how they relate to whether certain post-production costs may be deducted from Applicants' royalties, the Commission is not authorized to resolve this issue.

Accordingly, the Commission lacks jurisdiction to resolve the issues presented regarding the Kerr-McGee Leases, and the Application as related to Kerr-McGee and the Kerr-McGee Leases is hereby dismissed.

## CONCLUSION

For the reasons described above, the Application is dismissed in its entirety because the Commission lacks jurisdiction to resolve its claims related to contract interpretation.

## ORDER

THEREFORE it is hereby

ORDERED that Petitioners' Exceptions are GRANTED IN PART and DENIED IN PART. The Recommended Order should be modified consistent with the Commission's conclusions, but the Commission does not grant Petitioner's specific modifications to the Recommended Order.

IT IS FURTHER ORDERED that the Applicants' Application is DISMISSED for lack of subject matter jurisdiction.

IT IS FURTHER ORDERED:

1. The provisions contained in the above order shall become effective immediately.

2. The Commission expressly reserves its right, after notice and hearing, to alter, amend or repeal any and/or all of the above orders.

3. Under the State Administrative Procedure Act, the Commission considers this Order to be final agency action for purposes of judicial review within 35 days after the date this Order is mailed by the Commission.

4. An application for reconsideration by the Commission of this Order is not required prior to the filing for judicial review.

ENTERED this 7th day of November, 2023, as of October 4, 2023.

ENERGY AND CARBON MANAGEMENT COMMISSION
OF THE STATE OF COLORADO

By _____
Elias Thomas, Commission Secretary

Appellate Case: 23-1118    Document: 010110957475    Date Filed: 11/22/2023    Page: 10

## CERTIFICATE OF SERVICE

On November 7, 2023, a true and correct copy of the foregoing Order was served to the parties via the Commission's eFiling system.

_Elias Thomas_
Elias Thomas, Hearings Manager

Appellate Case: 23-1118    Document: 0101110957475    Date Filed: 11/22/2023    Page: 11