FILED
United States Court of Appeals
Tenth Circuit

April 9, 2024

Christopher M. Wolpert
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

―――――――――――――――――――――

MIKE BOULTER; BOULTER, LLC; RALPH NIX PRODUCE, INC.; BARCLAY FARMS, LLC, on behalf of themselves and classes of similarly situated persons,

    Plaintiffs - Appellants,

v.

NOBLE ENERGY INC.; KERR-MCGEE OIL & GAS ONSHORE, LP,

    Defendants - Appellees.

No. 23-1118
(D.C. No. 1:22-CV-01843-DDD-SKC)
(D. Colo.)

―――――――――――――――――――――

**ORDER**

―――――――――――――――――――――

Before **BACHARACH**, **McHUGH**, and **MORITZ**, Circuit Judges.

―――――――――――――――――――――

This matter is before the court on (1) the *Petition for Panel Rehearing and Rehearing En Banc* ("Petition") filed by Plaintiffs-Appellants, and (2) *Plaintiffs-Appellants' Motion to Include Attachments to Plaintiffs-Appellant's Petition for Panel Rehearing and Rehearing En Banc* ("Motion"). Upon careful consideration, we direct as follows.

Plaintiffs-Appellants' request for panel rehearing is GRANTED IN PART to the extent of the modifications in the attached revised order and judgment. The court's February 14, 2024 order and judgment is withdrawn and replaced by the attached revised

order and judgment, which shall be filed as of today's date. Because the panel's decision to partially grant rehearing resulted in only non-substantive changes to the order and judgment that do not affect the outcome of this appeal, Plaintiffs-Appellants may not file a second or successive rehearing petition. *See* 10th Cir. R. 40.3.

The Petition and the attached revised order and judgment were transmitted to all non-recused judges of the court who are in regular active service. As no member of the panel and no judge in regular active service on the court requested that the court be polled, the request for rehearing en banc is DENIED. *See* Fed. R. App. P. 35(f).

Plaintiffs-Appellants' Motion is DENIED AS MOOT.

Entered for the Court,

CHRISTOPHER M. WOLPERT, Clerk

FILED
United States Court of Appeals
Tenth Circuit

April 9, 2024

Christopher M. Wolpert
Clerk of Court

# UNITED STATES COURT OF APPEALS

# FOR THE TENTH CIRCUIT

―――――――――――――――――――

MIKE BOULTER; BOULTER, LLC; RALPH NIX PRODUCE, INC.; BARCLAY FARMS, LLC, on behalf of themselves and classes of similarly situated persons,

    Plaintiffs - Appellants,

v.

NOBLE ENERGY INC.; KERR-MCGEE OIL & GAS ONSHORE, LP,

    Defendants - Appellees.

No. 23-1118
(D.C. No. 1:22-CV-01843-DDD-SKC)
(D. Colo.)

―――――――――――――――――――

## ORDER AND JUDGMENT[*]

―――――――――――――――――――

Before **BACHARACH**, **McHUGH**, and **MORITZ**, Circuit Judges.

―――――――――――――――――――

Appellants, owners of royalty rights from oil and gas wells in Colorado, filed this putative class action asserting contract claims for underpayment of royalties. Three prior, substantially identical suits had been dismissed for lack of subject-matter jurisdiction owing to Appellants' failure to exhaust administrative remedies with the Colorado Oil and Gas Conservation Commission (the "Commission") as required by

―――――――――――――――――――

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

Colorado law. Each of the first three dismissals were entered "without prejudice." App. Vol. V at 1214, 1238, 1264.

Before the instant appeal, Appellants timely appealed the dismissal of their second and third complaints (but not their first), and we consolidated our review of both dismissal orders. We concluded that "unless an exception applie[d]," the dismissal of Appellants' first complaint barred, on collateral estoppel grounds, relitigation of the administrative exhaustion issue, and thus required dismissal of the second and third complaints. *Boulter v. Noble Energy Inc.*, 74 F.4th 1285, 1289 (10th Cir. 2023). Appellants invoked the intervening change-in-law exception to collateral estoppel, arguing that the Colorado Court of Appeals decision in *Antero Res. Corp. v. Airport Land Partners, Ltd.*, 19CA1799 (Colo. App. June 3, 2021) (unpublished), extinguished their obligation to exhaust administrative remedies with the Commission and thereby enabled them to avoid the preclusive effect of the initial dismissal. We held that such exception was unavailable where the supposed change in law occurred *after* the initiation of the subsequent action in which the exception was invoked. "[F]or the issue preclusion change-in-law exception to apply, the relevant change in law must occur between the preclusive judgment and any subsequent action." *Boulter*, 74 F.4th at 1290. Because *Antero* was released more than two weeks after Appellants filed their second complaint, we held that complaint was barred by issue preclusion even if *Antero* had changed the law governing Colorado's administrative exhaustion requirements. *Id.*

2

As to the third complaint—filed after *Antero* was issued, thereby qualifying as an "intervening" decision for issue preclusion purposes—we held that the Colorado Court of Appeals "did not intend to change the law in *Antero*," and we accordingly affirmed the dismissal of that complaint on issue preclusion grounds. *Id.* at 1291.

While the consolidated *Boulter* appeal was pending, Appellants filed yet another substantially similar complaint—their fourth—on July 26, 2022. Roughly eight months later, on March 23, 2023, the Colorado Supreme Court affirmed the Colorado Court of Appeals' *Antero* decision in *Antero Resources Corp. v. Airport Land Partners, Ltd.*, 526 P.3d 204 (Colo. 2023) ("*Airport Land*"). In opposing dismissal of their fourth complaint before the district court, Appellants urged that the *Airport Land* decision "squarely reject[ed]" any argument that Appellants are "required to exhaust their administrative remedies" with the Commission. App. Vol. V. at 1113. The district court dismissed the fourth complaint, applying issue preclusion and concluding that *Airport Land* was not an intervening change in law because it did not address—and therefore could not have altered—Appellants' obligation "to first present their dispute" to the Commission to exhaust administrative remedies. *Id.* at 1163. But unlike the first three dismissals, the district court entered the fourth dismissal "with prejudice." *Id.* at 1164. This timely appeal followed.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's application of issue preclusion to dismiss the fourth complaint, but we remand for the district court to reflect that its dismissal of that complaint is "without prejudice."

3

## I.     ANALYSIS

Under Colorado law, "[i]f complete, adequate, and speedy administrative remedies are available, a party must pursue these remedies before filing suit in district court." *City & Cnty. of Denver v. United Air Lines, Inc.*, 8 P.3d 1206, 1212 (Colo. 2000). Appellants' first complaint was dismissed for failure to plead that they had presented their contract dispute to the Commission and obtained a declination of jurisdiction, Colorado law prerequisites to "seek[ing] resolution of the matter in district court." *Boulter v. Noble Energy, Inc.*, 521 F. Supp. 1077, 1084 (D. Colo. 2021) (quoting Colo. Rev. Stat. § 34-60-118.5(5.5)).

Appellants' fourth complaint, devoid of allegations that Appellants had both presented their dispute to the Commission and obtained a declination of jurisdiction, was dismissed on collateral estoppel grounds over Appellants' objection that *Airport Land* qualified as an intervening change in law.

As explained below, the district court properly gave preclusive effect to the dismissal of the first complaint in dismissing the operative, fourth complaint. Appellants' claimed intervening change-in-law exception to collateral estoppel fails because (1) the supposed change in law occurred after they filed the operative complaint, and (2) the decision on which they rely did not change the relevant law. Finally, we conclude that the dismissal of Appellants' fourth complaint should have been entered without prejudice, and we reject Appellees' attempt to frame the "with prejudice" dismissal as a sanction.

### A.  Collateral Estoppel

"We review de novo the district court's application of the doctrine of collateral estoppel, which is also known as issue preclusion."[1] *Guttman v. Khalsa*, 669 F.3d 1101, 1109 (10th Cir. 2012).

The doctrine of collateral estoppel, or issue preclusion, "bars a party from relitigating an issue once it has suffered an adverse determination on the issue." *Park Lake Res. Ltd. Liab. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004). Under either federal or Colorado law, issue preclusion applies when:

> (1) [The issue is] identical to an issue actually litigated and necessarily adjudicated in the prior proceeding;
>
> (2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding;
>
> (3) There was a final judgment on the merits in the prior proceeding; and
>
> (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

---

[1] The parties' briefing on appeal, as well as the proceedings before the district court, routinely refer to the doctrine of res judicata, "a term that now comprises two distinct doctrines regarding the preclusive effect of prior litigation." *In re McDaniel*, 973 F.3d 1083, 1089 n.4 (10th Cir. 2020) (quoting *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020)). "The first doctrine, issue preclusion, 'precludes a party from relitigating an issue *actually decided* in a prior case,'" while "the second doctrine, claim preclusion, 'prevents parties from raising issues that *could have been raised and decided* in a prior action.'" *Id.* (quoting *Lucky Brand Dungarees*, 140 S. Ct. at 1594). To avoid conflating these two doctrines, our decisions generally refer to claim preclusion as "res judicata" and issue preclusion as "collateral estoppel." *See Matosantos Com. Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1209 (10th Cir. 2001). The preclusive effect implicated by this appeal "is one of issue preclusion (collateral estoppel) rather than claim preclusion (res judicata)." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (emphasis omitted).

*Boulter*, 74 F.4th at 1289 (10th Cir. 2023) (quoting *Nat. Energy Res. Co. v. Upper Gunnison River Water Conservancy Dist.*, 142 P.3d 1265, 1280 (Colo. 2006)). Issue preclusion applies even when a prior decision "never reached the merits"; that is, "dismissals for lack of jurisdiction preclude future relitigation of that jurisdictional question." *Id.*

"Even when the elements of issue preclusion are met, however, an exception may be warranted if there has been an intervening 'change in the applicable legal context.'" *Herrera v. Wyoming*, 139 S. Ct. 1686, 1697 (2019) (quoting *Bobby v. Bies*, 556 U.S. 825, 834 (2009)). "The change-in-law exception recognizes that applying issue preclusion in changed circumstances may not 'advance the equitable administration of the law.'" *Id.* (quoting *Bobby*, 556 U.S. at 836–37).

To avail oneself of the change-in-law exception, the timing of the purported change in law is critical: the exception may be invoked only when the change in law occurs before the filing of the subsequent suit in which the party asserts the exception. *See Boulter*, 74 F.4th at 1290 ("Under either [federal or Colorado] law, we conclude that for the issue preclusion change-in-law exception to apply, the relevant change in law must occur between the preclusive judgment and any subsequent action.").

Appellants' claimed exception to issue preclusion thus fails at the outset because the decision on which they rely for the purported change in law was issued almost eight months *after* they filed the operative complaint. Under *Boulter*, then,

6

*Airport Land* is incapable of helping Appellants avoid the preclusive effect of the earlier judgments. *See* 74 F.4th at 1290.

But even if we set aside the timing issue, we conclude that *Airport Land* did not change the law governing Appellants' obligation to exhaust administrative remedies with the Commission.

In *Airport Land*, the plaintiffs had initially done what Appellants did here—proceeded directly to court without first submitting their royalty underpayment claims to the Commission. *Airport Land*, 526 P.3d at 207. The defendant moved to dismiss the case, "arguing that the claims should have been brought before [the Commission] in the first instance." *Id.* at 207–08. The state district court agreed, "finding that [plaintiffs] could sue in district court only after exhausting their administrative remedies by giving [the Commission] the opportunity to determine that it did not have jurisdiction." *Id.* at 208.

Following dismissal, the plaintiffs in *Airport Land*, unlike the Appellants here, proceeded to bring "their claims before [the Commission], asking it to determine whether it had jurisdiction." *Id.* The Commission declined jurisdiction after "determin[ing] that each of the [plaintiffs'] claims raised a bona fide dispute regarding how the governing lease contract should be interpreted." *Id.* Following the Commission's declination of jurisdiction, the plaintiffs sought judicial review of the Commission's decision in state district court. *Id.* But the district court held that the Commission *did* have jurisdiction because "the contracts at issue were unambiguous and resolution of the disputes required only factual determinations." *Id.* The plaintiffs

7

appealed, and the Colorado Court of Appeals reversed the district court, "holding that [the Commission] reasonably concluded that it lacked jurisdiction." *Id.*

The main issue before the Colorado Supreme Court, then, was whether the Colorado Court of Appeals correctly held that the Commission's jurisdictional determination was "reasonable." More specifically, the Colorado Supreme Court framed the question presented as follows:

> It is undisputed that the Colorado Oil and Gas Conservation Commission ("COGCC" or "the Commission") lacks jurisdiction under section 34-60-118.5(5), C.R.S. (2022), to engage in contract interpretation to resolve a bona fide dispute between parties under an oil and gas lease. But what is a "bona fide dispute over the interpretation of a contract"?

*Id.* at 206–07.

The *Airport Land* court set forth the controlling jurisdictional statute, which provides:

> Before hearing the merits of any proceeding regarding the payment of proceeds pursuant to this section, the oil and gas conservation commission shall determine whether a bona fide dispute exists regarding the interpretation of a contract defining the rights and obligations of the payer and payee. If the commission finds that such a dispute exists, the commission shall decline jurisdiction over the dispute and the parties may seek resolution of the matter in district court.

*Id.* at 209–10 (quoting Colo. Rev. Stat. § 34-60-118.5(5.5)).

Having set forth the scope of the appeal and the controlling law, the Colorado Supreme Court held that the overall statutory design does not permit the Commission "to first engage in contract interpretation to assess the bona fides of the dispute and then to decline jurisdiction." *Id.* at 210. Rather, the *Airport Land* court held, the Commission need find only that "the parties in good faith disagree about the meaning

8

or application of a relevant term in a lease agreement or contract" before declining jurisdiction. *Id.* This dispute-focused analysis, as distinguished from a contract interpretation-focused analysis, is the requisite jurisdictional inquiry: "once parties whose mineral interests are the subject of a lease agreement have raised a nonfrivolous, genuine dispute about a contract term, jurisdiction to interpret that contract lies with the courts, and not with [the Commission]." *Id.*

Appellants claim that *Airport Land*'s conclusion that the Commission may not engage in contract interpretation "to determine whether a bona fide dispute over contract interpretation exists" means parties need not submit such a dispute to the Commission at all.[2] *Id.* Appellees, in contrast, assert that *Airport Land*—even if it had been issued before the operative complaint—did not change the law on the relevant issue here: whether Appellants must first present a purported "bona fide"

---

[2] In their reply brief, Appellants represent that while this appeal was pending, they finally exhausted administrative remedies by obtaining a declination of jurisdiction from the Commission, and thus that the district court's application of collateral estoppel is "effectively moot." Reply Br. at 1. But "[f]ederal jurisdiction is determined based on the facts as they existed at the time the complaint was filed," *Ravenswood Inv. Co., L.P. v. Avalon Corr. Servs.*, 651 F.3d 1219, 1223 (10th Cir. 2011), and when the instant complaint was filed, Appellants had not exhausted administrative remedies and accordingly did not plead as much. Appellants' subsequent exhaustion of administrative remedies may well enable them to file another complaint that adequately alleges the existence of federal subject-matter jurisdiction, but it does not permit them to rewrite the operative complaint on appeal and overcome the application of issue preclusion to dismiss the same.

To support their subsequent-exhaustion argument, Appellants moved to supplement their appendix to include the Commission's declination of jurisdiction. We DENY that motion to supplement as moot given our conclusion that Appellants cannot cure the deficiencies in the operative complaint by exhausting administrative remedies *after* filing the operative complaint.

9

dispute regarding contractual interpretation to the Commission and obtain a declination of jurisdiction before filing suit in court.

We agree with Appellees that *Airport Land* effected no change on the relevant issue of law. Rather, the *Airport Land* decision did no more than clarify the Commission's limited role in disputes implicating contract interpretation, which is properly constrained to determining whether "the parties in good faith disagree." *Id.* Thus, even after *Airport Land*, a "proceeding regarding the payment of proceeds" must first be presented to the Commission, and jurisdiction is proper in district court only after the Commission determines "a bona fide dispute exists regarding the interpretation of a contract."[3] Colo. Rev. Stat. § 34-60-118.5(5.5).

In sum, even if we could properly consider the effect of a decision released after the operative complaint was filed, Appellants' claimed change-in-law exception to issue preclusion is nevertheless independently doomed because *Airport Land* did not alter the obligation to present their proceeding to the Commission and to obtain a declination of jurisdiction before seeking judicial relief.

---

[3] Colorado law, of course, recognizes exceptions to requirements to exhaust administrative remedies, including an exception for when it is "'clear beyond a reasonable doubt' that further administrative review by the agency would be futile because the agency will not provide the relief requested." *State v. Golden's Concrete Co.*, 962 P.2d 919 (Colo. 1998) (quoting *Colorado v. Veterans Admin.*, 430 F. Supp. 551, 558 (D. Colo. 1977)). Appellants make no argument that exhaustion would be futile, so we do not address this exception here, and we express no opinion as to whether Colorado law permits district courts to conclude the futility exception is satisfied upon a finding that "a bona fide dispute exists regarding the interpretation of a contract." Colo. Rev. Stat. § 34-60-118.5(5.5).

### B.　　*Dismissals for Lack of Subject-Matter Jurisdiction*

Having concluded that the district court properly applied issue preclusion in dismissing the fourth complaint for want of subject-matter jurisdiction, we must further review its entry of such dismissal "with prejudice."

The decision to dismiss a complaint with or without prejudice "fall[s] within the district court's discretion and '[r]eversal requires a clear abuse of discretion.'" *Brown v. Baeke*, 413 F.3d 1121, 1123 (10th Cir. 2005) (second alteration in original) (internal quotation marks omitted). It is well settled that "dismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006). Indeed, "once a court determines it lacks jurisdiction over a claim, it perforce lacks jurisdiction to make any determination of the merits of the underlying claim." *Id.* at 1217.

Here, the district court committed legal error, and thereby abused its discretion, by dismissing the complaint with prejudice for lack of subject-matter jurisdiction (i.e., by giving preclusive effect to earlier determinations of no subject-matter jurisdiction). *See id.* at 1218; *Chegup v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 28 F.4th 1051, 1071 (10th Cir. 2022). The district court's dismissal order should thus have been entered "without prejudice."

### C.     Case Termination Sanctions

Recognizing that the district court's "with prejudice" dismissal would ordinarily be reversible error, Appellees attempt to characterize that disposition as a "sanction" for Appellants' successive filing of four complaints that do not establish subject-matter jurisdiction. And they urge that such "sanction" was not an abuse of discretion.

Appellees read far too much into the district court's relevant dismissal order. Although that order suggests some frustration with Appellants' filing of four successive complaints, the order is devoid of any language connecting that frustration to the severe sanction of case termination. Indeed, the district court's order never uses the word "sanction."

But even if we assumed Appellees are correct that the prejudicial dismissal was entered as a sanction, it could not withstand appellate scrutiny in the absence of the findings our precedent demands. *See Xyngular v. Schenkel*, 890 F.3d 868, 873 (10th Cir. 2018).

"Although the district court has discretion to dismiss, it must be exercised with restraint." *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005). And because "dismissal is such a harsh sanction, it is appropriate only in cases of willfulness, bad faith, or some fault." *Id.* (internal quotation marks omitted). Evidence of such culpability must be established by "clear and convincing" evidence. *Xyngular*, 890 F.3d at 873–74.

Before imposing a terminating sanction, district courts must also consider the so-called *Ehrenhaus* factors. *See id.* at 873. Those factors are:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

*Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) (internal citations and quotation marks omitted). The district court "should ordinarily evaluate these factors on the record." *Id.*; *see Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1439 (10th Cir. 1990) ("In any event, the district court should set forth in the record the justification for the sanction imposed.").

The dismissal order does not even gesture toward these requirements, let alone make the requisite findings.[4] We thus reject Appellees' attempts to transform what is, on its face, a garden-variety dismissal for lack of subject-matter jurisdiction into an order imposing the harshest of sanctions—case termination.

---

[4] Appellees suggest that we may affirm the prejudicial dismissal as a sanction based on our own review of the record. But a "district court's failure to provide 'a detailed evaluation of [the *Ehrenhaus*] factors on the record' makes 'it impossible for us to "engag[e] in any meaningful review of the trial court's decision."'" *Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005) (second alteration in original) (quoting *Mobley v. McCormick*, 40 F.3d 337, 341 (10th Cir. 1994)). Indeed, the difficulty of conducting such an analysis on this record is evidenced by the Appellees' cursory attempt to do so, the bulk of which is entirely unsupported by record citations. *See* Resp. Br. at 15–16.

## II. CONCLUSION

For the reasons stated, we AFFIRM the district court's dismissal, but REMAND with instructions to amend the dismissal to reflect that it is without prejudice.

          Entered for the Court

          Carolyn B. McHugh
          Circuit Judge